Isaac N. Sutphin, P.C. (Wyo. Bar No. 6-3711)
Macrina M. Jerabek (Wyo. Bar No. 7-5757)
Holland & Hart LLP
2515 Warren Avenue, Suite 450
P.O. Box 1347
Cheyenne, WY 82003
Telephone: (307) 778-4200
Facsimile: (307) 778-8175
insutphin@hollandhart.com
mmjerabek@hollandhart.com

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2020 OCT 14  PM 4: 33

MARGARET BOTKINS, CLERK
CHEYENNE

ATTORNEYS FOR PLAINTIFF
ARTISAN AND TRUCKERS CASUALTY COMPANY

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| ARTISAN AND TRUCKERS CASUALTY COMPANY, a foreign insurer,<br><br>       Plaintiff,<br><br>v.<br><br>BOTTGER ENTERPRISES INC., a Wyoming Corporation; and STEVE H. BOTTGER, an individual person,<br><br>      Defendants. | Civil Action No. 20CV190 J |

## COMPLAINT FOR DECLARATORY RELIEF

### I.     INTRODUCTION

1.     This is an insurance coverage action seeking declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.  Artisan and Truckers Casualty Company (hereinafter "Artisan") seeks a determination that it does not have a duty to provide coverage to Bottger Enterprises Inc. (hereinafter "BEI") and Steve H. Bottger (hereinafter "Bottger") under a policy of insurance issued to BEI by Artisan with respect to claims arising out of an automobile accident that is the subject of this case.

## II.   PARTIES

2.      Plaintiff Artisan is a foreign insurance company organized under the laws of the State of Ohio with its principal place of business located in the State of Ohio.

3.      Defendant BEI is a corporation organized under the laws of the State of Wyoming with a principal place of business located in Laramie, Wyoming.

4.      Defendant Bottger is a citizen of the State of Wyoming.

## III.   JURISDICTION AND VENUE

5.      This Court has jurisdiction over this claim pursuant to 28 U.S.C. §1332 as the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and diversity amongst the parties is complete.

6.      Venue is proper with this Court pursuant to 28 U.S.C. §1391 as this case involves claims for insurance coverage stemming from losses which occurred in Laramie, Wyoming and Bottger resides within this judicial district.

## IV.   FACTS

**A.    <u>Background</u>**

7.      Bottger is the owner and operator of BEI.

8.      BEI is a construction contractor specializing in masonry, drywall, and floor work.

9.      Bottger had seen a 1999 Ford F-350 pick-up truck ("F-350") on the roadside advertised for sale near the intersection of Tumbleweed Trail and WY-230, southwest of Laramie, Wyoming.

10.     On September 30, 2019, Bottger contacted the owners of the F-350, Ray and Belinda Powers (collectively "Powers"), with an interest in the F-350.

11.     When Bottger visited the Powers, Ray Powers was out of town, therefore his wife Belinda provided Bottger with the keys to the F-350.

12.     Bottger took the F-350 for a test drive.

13.     No money exchanged hands between Bottger and Powers and the title remained in the Powers' name.

14.     The F-350 was not registered or insured by Powers.

15.     On September 30, 2019, while returning from the test drive, Bottger was westbound on WY-230, a two-lane highway.

16.     Bottger stopped the F-350 with his left turn signal on waiting for traffic to clear so he could execute a left-hand turn onto Tumbleweed Trail Road leading to the Powers' house.

17.     Stopped immediately behind Bottger's pickup was a 2000 Pontiac Grand Am ("2000 Pontiac").

18.     A 2000 Peterbuilt tractor trailer ("2000 Peterbuilt") was behind the 2000 Pontiac.

19.     A 2012 GMC ("2012 GMC") pickup driven by Brandon Chimenti ("Chimenti") was behind the 2000 Peterbuilt.

20.     Chimenti attempted to pass the 2000 Peterbuilt. However, the passing maneuver was tight.

21.     The driver of the 2000 Pontiac saw Chimenti approaching from the rear and was afraid Chimenti would rear-end her vehicle, so she drove the 2000 Pontiac off the road into the ditch.

22.     As Chimenti's 2012 GMC returned into the westbound lane of WY-230, he rear-ended Bottger in the F-350.

23.     The collision caused Bottger's pickup to be pushed into the path of an oncoming 2015 Peterbuilt which struck Bottger's vehicle.

24.     The trailer being pulled by the semi struck Bottger's vehicle and pulled Bottger's vehicle backwards toward a 2000 Peterbuilt that had been approaching the F-350 from the rear.

25.     The 2015 Peterbuilt continued out of control and hit the 2000 Peterbuilt, knocking it onto its side resulting in an explosion and fire that burned the F-350 and the 2000 Peterbuilt.

26.     This accident resulted in serious injuries and a fatality.

**B.**     **Bottger's Claim and Artisan's Response Thereto**

27.     As a result of injuries sustained in the subject accident, Bottger tendered a claim to Artisan for Medical Payments (MedPay) and Underinsured (UIM) benefits under the Artisan Policy issued to BEI.

28.     Artisan promptly acknowledged Bottger's claim and commenced its coverage investigation.

29.     Ultimately, Artisan determined that the F-350 did not qualify as an "insured auto" as that term is defined in the Artisan Policy.  For that reason, among others, Artisan advised Bottger that there was no MedPay or UIM coverage available to him under the Artisan Policy.

30.     Bottger has disputed Artisan's conclusions.   Artisan continues to maintain its coverage position.

C.     **The Artisan Policy**

31.     Artisan issued a Commercial Auto Insurance Policy no. 08432038-6 to BEI with a policy period of February 28, 2019 to February 28, 2020 (hereinafter "the Artisan Policy").

32.     The Artisan Policy lists BEI as the named insured.

33.     The insuring agreement for liability coverage in Artisan Policy contains the following language, in pertinent parts:

### INSURING AGREEMENT - LIABILITY TO OTHERS

Subject to the Limits of Liability, if **you** pay the premium for liability coverage for the **insured auto** involved, **we** will pay damages, other than punitive or exemplary damages, for **bodily injury, property damage,** and **covered pollution cost or expense,** for which an **insured** becomes legally responsible because of an **accident** arising out of the ownership, maintenance or use of an **insured auto.** However, we will only pay for the **covered pollution cost or expense** if the same **accident** also caused **bodily injury** or **property damage** to which this insurance applies.

**We** will settle or defend, at **our** option, any claim or lawsuit for damages covered by this Part I. **We** have no duty to settle or defend any lawsuit, or make any additional payments, after the Limit of Liability for this coverage has been exhausted by payment of judgments or settlements.

### ADDITIONAL DEFINITIONS USED IN THIS PART ONLY

A.     When used in Part I - Liability To Others, **insured** means:

1.     **You** with respect to an **insured auto.**

2.     Any person while using, with **your** permission, and within the scope of that permission, an **insured auto** **you** own, hire or borrow except:

(a)     A person while he or she is working in a business of selling, leasing, repairing, parking, storing, servicing, delivering or testing autos, unless that business is **yours** and it was so represented in **your** application.

(b)     A person, other than one of **your** employees, partners (if **you** are a partnership), members

(if you are a limited liability company), officers or directors (if **you** are a corporation), or a lessee or borrower or any of their employees, while he or she is moving property to or from an **insured auto.**

(c)   The owner or anyone else from whom the **insured auto** is leased, hired, or borrowed unless the **insured auto** is a **trailer** connected to a power unit that is an **insured auto.** However, this exception does not apply if the **insured auto** is specifically described on the **declarations   page.**

For purposes of this subsection A.2., an **insured auto you** own includes any **auto** specifically described on the **declarations page.**

3.   Any other person or organization, but only with respect to the legal liability of that person or organization for acts or omissions of any person otherwise covered under this Part I - Liability To Others.

. . .

B.   When used in Part I - Liability To Others, **insured auto** also includes:

1.   **Trailers** designed primarily for travel on public roads, while connected to **your insured auto** that is a power unit;

2.   **Mobile equipment** while being carried or towed by an **insured auto**; and

3.   Any **temporary substitute auto.**

Policy No. 08432038-6, Form 6912 (06/10) at 6.

34.   The following definitions also apply to the above referenced provisions:

. . .

5.      **"Insured auto"** or **"your insured auto"** means:

a.      Any **auto** specifically described on the **declarations page**; or

b.      An additional **auto** for Part I - Liability To Others and/or Part II - Damage To Your Auto on the date **you** become the owner if:

(i)      **you** acquire the **auto** during the policy period shown on the **declarations page**;

(ii)     **we** insure all **autos** owned by **you** that are used in **your** business;

(iii)    no other insurance policy provides coverage for that **auto**; and

(iv)     **you** tell **us** within 30 days after **you** acquire it that **you** want **us** to cover it for that coverage.

If **you** add any coverage, increase **your** limits or make any other changes to this policy during the 30 day period after **you** acquire an additional **auto**, these changes to **your** policy will not become effective until after **you** ask **us** to add the coverage, increase **your** limits or make such changes for the additional **auto**. **We** may charge premium for the additional **auto** from the date **you** acquire the **auto**.

With respect to Part I - Liability To Others, if **we** provide coverage for an additionally acquired **auto** in accordance with this paragraph b., **we** will provide the same coverage for such additional **auto** as **we** provide for any **auto** shown on the **declarations page**.

With respect to Part II - Damage To Your Auto, if **we** provide coverage for an **auto you** acquire in addition to any **auto** specifically described on the **declarations page**, and the additional **auto** is:

(i)      a **private passenger auto**, **we** will provide the broadest coverage **we** provide for any **auto** shown on the **declarations page**; or

      (ii)     any **auto** other than a **private passenger auto**, and **you** have purchased Physical Damage coverage for at least one **auto** other than a **private passenger auto**, **we** will provide the broadest coverage for which the newly acquired **auto** is eligible.

    c.     Any replacement **auto** on the date **you** become the owner if:

      (i)     **you** acquire the **auto** during the policy period shown on the declarations **page**;

      (ii)     the **auto** that **you** acquire replaces one specifically described on the **declarations page** due to termination of your ownership of the replaced auto or due to mechanical breakdown of, deterioration of, or **loss** to the replaced **auto** that renders it permanently inoperable; and

      (iii)    no other insurance policy provides coverage for that **auto**.

     . . .

Policy No. 08432038-6, Form 6912 (06/10) at 2-3.

    14.     "**Temporary substitute auto**" means any **auto you** do not own while used with the permission of its owner as a temporary substitute for an **insured auto** that has been withdrawn from normal use due to breakdown, repair, servicing, loss or destruction.

Policy No. 08432038-6, Form 6912 (06/10) at 5.

    17.     "**You**", "**your**" and "**yours**" refer to the named insured shown on the **declarations page**.

Policy No. 08432038-6, Form 6912 (06/10) at 5.

    35.    The Artisan Policy contains an Uninsured/Underinsured Motor Coverage Endorsement (hereinafter "UM/UIM Endorsement).

36.     The insuring agreement for liability coverage in the UM/UIM Endorsement contains the following language, in pertinent parts:

### UNINSURED/UNDERINSURED MOTORIST COVERAGE ENDORSEMENT

Except as specifically modified **in** this endorsement, all provisions of the Commercial Auto Policy apply.

**We** agree with **you** that the insurance provided under **your** Commercial Auto Policy, and related endorsements, is modified as follows:

### INSURING AGREEMENT

Subject to the Limits of Liability, if **you** pay the premium for Uninsured/Underinsured Motorist Coverage, **we** will pay for damages, other than punitive or exemplary damages, which an **insured** is legally entitled to recover from the **owner** or operator of an **uninsured auto** because of **bodily injury:**

1. sustained by an **insured;**
2. caused by an **accident;** and
3. arising out of the ownership, maintenance, or use of an **uninsured auto.**

**We** will pay under this endorsement only after the limits of liability under all applicable **bodily injury** liability bonds and policies have been exhausted by payment of judgments or settlements.

Any lawsuit against **us** for benefits under this endorsement must be commenced prior to the expiration of the bodily injury statute of limitations in the state in which the **accident** occurred.

### ADDITIONAL DEFINITIONS

When used in this endorsement, whether in the singular, plural, or possessive:

1. **"Insured"** means:

    . . .

    b.      if the named insured shown on the **Declarations Page** is a corporation, partnership, organization or any other entity that is not a natural person:

(i)     any person **occupying your insured auto** or a **temporary substitute auto;** and

(ii)    any person who is entitled to recover damages covered by this endorsement because of **bodily injury** sustained by a person described in (i) above.

2. **"Non-owned auto"** means any **auto** that is not **owned by you** or furnished for **your** regular use and, if the named insured is a natural person, not **owned** by or furnished for the regular use of the named insured's spouse or **relative.**

3. **"Owned"** means the person or organization:

   a.    holds legal title to the vehicle;

   b.    has legal possession of the vehicle that is subject to a written security agreement with an original term of six (6) months or more; or

   c.    has legal possession of the vehicle that a leased to that person or organization under a written agreement for a continuous period of six (6) months or more.

4. **"Owner"** means the person or organization who, with respect to a vehicle:

   a.    holds legal title to the vehicle;

   b.    has legal possession of the vehicle that is subject to a written security agreement with an original term of six (6) months or more; or

   c.    has legal possession of the vehicle that is leased to that person or organization under a written agreement for a continuous period of six (6) months or more.

5. **"Uninsured auto"** means an **auto** or trailer of any type:

   a.    to which no **bodily injury** liability bond or policy applies at the time of the **accident;**

   b.    to which a **bodily injury** liability bond or policy applies at the time of the **accident,** but the bonding or insuring company:

         (i)    denies coverage; or

      (ii)     is or becomes insolvent;

    c.     that is a hit-and-run vehicle whose operator or **owner** cannot be identified and which causes an **accident** resulting in **bodily injury** to an insured provided that the **insured,** or someone on his or her behalf, reports the **accident** to the police or civil authority within twenty-four (24) hours after the occurrence of the **accident** or as soon thereafter as is practicable under the circumstances; or

    d.     to which a **bodily injury** liability bond or policy applies at the time of the accident, but the sum of all applicable limits of liability for **bodily injury** is less than the coverage limit for Underinsured Motorist Coverage shown on the **Declarations Page.**

An **"uninsured auto"** does not include any motorized auto or equipment:

    a.     **owned by,** furnished to, or available for the regular use of **you** or, if the named insured is a natural person, a **relative;**

    b.     **owned** or operated by a self- insurer under any applicable vehicle law, except a self- insurer that is or becomes insolvent;

    c.     **owned** by any governmental unit or agency unless the motorized auto's use is unauthorized;

    d.     designed mainly for use off public roads, while not on public roads;

    e.     while being used as a residence or premises except mobile recreational vehicles while being used for normal and ordinary purposes;

    f.     shown on the **Declarations Page** of this policy; or

    g.     not required to be registered as a motor vehicle.

37.    The UM/UIM Endorsement contains the following Exclusions:

**EXCLUSIONS~ READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS ENDORSEMENT.**

1. Coverage under this endorsement is not provided for **bodily injury** sustained by any person while using or **occupying:**

    a.    an **insured auto** without the express or implied permission of **you** or, if the named insured is a natural person, a **relative;**

    b.    a **non-owned auto** without the express or implied permission of the **owner;** or

    c.    an **auto** or device of any type designed to be operated on the public roads that is owned by, furnished to, or available for the regular use of **you** or, if the named insured is a natural person, a **relative,** other than an **insured auto** or **temporary substitute auto.**

2. Coverage under this endorsement will not apply directly or indirectly to benefit any insurer or self- insurer under any of the following or similar laws:

    a.    workers' compensation law; or
    b.    disability benefits law.

Policy No. 08432038-6, Form 6912 (06/10) at 33-35.

38.    The following general definition also applies to the above referenced provisions:

    9.    **"Occupying"** means in, on, entering or No. 08432038-6, Form 6912 (06/10) at 5.

39.    The Artisan Policy contains a Medical Payments Coverage Endorsement (hereinafter "Medical Payments Endorsement").

40.    The insuring agreement for liability coverage in the Medical Payments Endorsement contains the following language, in pertinent parts:

### MEDICAL PAYMENTS COVERAGE ENDORSEMENT

Except as specifically modified in this endorsement, all provisions of the Commercial Auto Policy apply.

**We** agree with **you** that the insurance provided under **your** Commercial Auto Policy is modified as follows:

**INSURING AGREEMENT**

Subject to the Limits of Liability, if **you** pay the premium for Medical Payments Coverage, we will pay the **usual and customary charge** for reasonable and necessary expenses, incurred within three (3) years from the date of an **accident,** for medical and funeral services because of **bodily injury:**

1. sustained by an **insured;**
2. caused by an **accident;** and
3. arising out of the ownership, maintenance or use of a motor vehicle or **trailer.**

Any dispute as to the **usual and customary charge** will be resolved between the service provider and us.

**ADDITIONAL DEFINITIONS**

When used in this endorsement, whether in the singular, plural, or possessive:

1. **"Insured"** means:

    a.    if the named insured shown on the **Declarations Page** is a natural person:

        (i)    **you** while **occupying** any **auto,** other than an **auto owned** by **you** which is not an **insured auto;**

        (ii)    a **relative** while **occupying** an **insured auto, temporary substitute auto,** or **non-owned auto;**

        (iii)    **you** or any **relative** when struck by a land motor vehicle of any type, or a **trailer,** while not **occupying** a motor vehicle; and

        (iv)    any other person while **occupying** an **insured auto, temporary substitute auto,** or a **trailer** while attached to an **insured auto;** or

    b.    if the named insured shown on the **Declarations Page** is a corporation partnership, organization or any other entity that is not a natural person, any person **occupying your insured auto, temporary substitute auto,** or a **trailer** while attached to an **insured auto.**

2. **"Non-owned auto"** means any **auto** that is not **owned** by **you** or furnished for **your** regular use and, if the named insured is a natural person, not **owned** by or furnished for the regular use of the named insured's spouse or a **relative.**

3. **"Owned"** means the person or organization:

   a.    holds legal title to the vehicle;

   b.    has legal possession of the vehicle that is subject to a written security agreement with an original term of six (6) months or more; or

   c.    has legal possession of the vehicle that is leased to that person or organization under a written agreement for a continuous period of six (6) months or more.

4. **"Owner"** means the person or organization who, with respect to a vehicle:

   a.    holds legal title to the vehicle;

   b.    has legal possession of the vehicle that is subject to a written security agreement with an original term of six (6) months or more; or

   c.    as legal possession of the vehicle that is leased to that person or organization under a written agreement for a continuous period of six (6) months or more.

5. **"Usual and customary charge"** means an amount which we determine represents a customary charge for services in the geographical area in which the service is rendered. We shall determine the usual and customary charge through the use of independent sources of **our** choice.

41.    The Medical Payments Endorsement contains the following Exclusions:

**<u>EXCLUSIONS</u> - READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS ENDORSEMENT.**

Coverage under this endorsement does not apply to **bodily injury**:

. . .

2. occurring during the course of employment if workers' compensation coverage should apply;

3. arising out of an **accident** involving an **auto** or **trailer** while being used by a person while employed or engaged in the business of selling, leasing, repairing, parking, storing, servicing, delivering, or testing vehicles, unless that business is **yours**;

. . .

8. sustained by any person while **occupying** an **insured auto**, **temporary substitute auto**, or **trailer** without the express or implied permission of **you** or, if the named insured is a natural person, a **relative**;

9. sustained by any person while **occupying** a **non-owned auto** without the express or implied permission of the **owner**;

. . .

Policy No. 08432038-6, Form 6912 (06/10) at 40-41.

42.    The Artisan Policy contains the following "Other Insurance" provision:

3.    **Other Insurance**

a.    For any **insured auto** that is specifically described on the **declarations page**, this policy provides primary coverage. For an **insured auto** which is not specifically described on the **declarations page**, coverage under this policy will be excess over any and all other valid and collectible insurance, whether primary, excess or contingent.

. . .

b.    If coverage under more than one policy applies on the same basis, either excess or primary, **we** will pay **only** our proportionate share. **Our** proportionate share is the portion that the Limit of Liability of this policy beats to the total of the limits of all the

> Coverage Forms and policies covering on the
> same basis.

Policy No. 08432038-6, Form 6912 (06/10) at 22.

## V.   THERE IS AN ACTUAL AND JUSTICIABLE CONTROVERSY AS TO ARTISAN'S COVERAGE OBLIGATIONS

43.   Artisan incorporates the allegations set forth in the preceding paragraphs as if fully set forth herein.

44.   The Artisan Policy provides liability coverage for damages, other than punitive or exemplary damages, for "bodily injury" and "property damage" for which an "insured" becomes legally responsible because of an accident arising out of the ownership, maintenance or use of an "insured auto."

45.   There is an actual and justiciable controversy as whether any of the of the claims asserted by BEI or Bottger are for damages arising out of the ownership, maintenance, or use of an "insured auto."

46.   The Artisan Policy defines "insured auto" as an auto specifically described on the declarations page, an "additional auto," a "replacement auto," and a "temporary substitute auto."

47.   The Ford F-350 is not listed on the Declarations page of the Artisan Policy.

48.   The Artisan Policy defines "additional auto" as an auto acquired during the policy period, the policy covers every auto owned by the "insured" or "insured's business," no other insurance policy covers the auto, and the "insured" notifies Artisan within thirty days of acquiring the auto that it wants the new auto to be included under the coverage.

49.   There is an actual and justiciable controversy as to whether the F-350 qualifies as an "additional auto."

50.     The Artisan Policy defines a "replacement auto" as an auto that the "insured" acquires during the policy period, that replaces an auto listed on the declaration page due to breakdown or loss that renders the listed auto inoperable, and is an auto that is not covered by any other insurance policy.

51.     There is an actual and justiciable controversy as to whether the F-350 qualifies as a "replacement auto."

52.     The Artisan Policy defines "temporary substitute auto" as any auto not owned by the "insured" who is using it with permission in place of an "insured auto" that is taken out of normal use due to breakdown, repair, servicing, loss or destruction.

53.     There is an actual and justiciable controversy as to whether the F-350 qualifies as a "temporary substitute auto."

54.     The UM/UIM Endorsement provides coverage for damages, other than punitive or exemplary damages, which an "insured" is legally entitled to recover from the "owner" or operator of an "uninsured auto" because of "bodily injury" sustained by an "insured," caused by an "insured," and arising out of the ownership, maintenance, or use of an "insured auto."

55.     There is an actual and justiciable controversy as to whether Artisan owes coverage to BEI or Bottger for damages that they are legally entitled to recover from the "owner" or operator of an "uninsured auto" because of "bodily injury" sustained by an "insured," caused by an "insured," and arising out of the ownership, maintenance, or use of an "insured auto."

56.     The UM/UIM Endorsement provides that Artisan will pay an insured under the UIM Endorsement only after the limits of liability under all applicable "bodily injury" liability bonds and policies have been exhausted by payment of judgments or settlements.

57.    There is an actual and justiciable controversy as to whether the limits of liability under all applicable "bodily injury" liability bonds and policies have been exhausted by payment of judgments or settlements.

58.    The UM/UIM Endorsement excludes coverage for "bodily injury" sustained by any person  while using or "occupying" an insured auto without the express or implied permission of the insured, a "non-owned auto" without the express or implied permission of the "owner," or an "auto" or device of any type designed to be operated on the public roads that is owned by, furnished to, or available for the regular use of the named insured.

59.    There is an actual and justiciable controversy as to whether Artisan owes coverage to BEI or Bottger for "bodily injury" sustained by any person  while using or "occupying" an "insured auto" without the express or implied permission of BEI, a "non-owned auto" without the express or implied permission of the "owner," or an "auto" or device of any type designed to be operated on the public roads that is owned by, furnished to, or available for the regular use of BEI.

60.    The UM/UIM Endorsement does not apply directly or indirectly to benefit an insurer or self-insurer under workers' compensation law or disability benefits law.

61.    There is an actual and justiciable controversy as to whether Artisan owes coverage to BEI or Bottger and/or whether workers' compensation law or disability benefits law apply to the subject accident.

62.    The Medical Payment Endorsement provides that Artisan will pay the "usual and customary charge" for reasonable and necessary expenses, incurred within three (3) years from the date of the "accident" for medical and funeral services because of a "bodily injury" sustained by an "insured," caused by an "accident" and arising out of the ownership, maintenance or use of a motor vehicle or "trailer."

63.     There is an actual and justiciable controversy as to whether Artisan owes coverage to BEI or Bottger for the "usual and customary charge" for reasonable and necessary expenses, incurred within three (3) years from the date of the "accident" for medical and funeral services because of a "bodily injury" sustained by an "insured," caused by an "accident" and arising out of the ownership, maintenance or use of a motor vehicle or "trailer."

64.     The Medical Payments Endorsement excludes coverage for "bodily injury" occurring during the course of employment if workers' compensation coverage applies.

65.     There is an actual and justiciable controversy as to whether Artisan owes coverage to BEI or Bottger for "bodily injury" occurring during the course of employment and whether workers' compensation coverage applies to the subject accident.

66.     The Medical Payments Endorsement excludes coverage for "bodily injury" arising out of an "accident" involving an "auto" or "trailer" while being used by a person while employed or engaged in the business of selling, leasing, repairing, parking, storing, serving, delivering, or testing vehicles, unless that business is the named insureds.

67.     There is an actual and justiciable controversy as to whether Artisan owes coverage to BEI or Bottger for "bodily injury" arising out of an "accident" involving an "auto" or "trailer" while being used by a person while employed or engaged in the business of selling, leasing, repairing, parking, storing, serving, delivering, or testing vehicles, other than BEI's business.

68.     The Medical Payments Endorsement excludes coverage for "bodily injury" sustained by any person while "occupying" an "insured auto," "temporary substitute auto," or "trailer" without the express or implied permission of the insured.

69.     There is an actual and justiciable controversy as to whether Artisan owes coverage to BEI or Bottger for "bodily injury" sustained by any person, including Bottger, while

"occupying" an "insured auto," "temporary substitute auto," or "trailer" without the express or implied permission of BEI.

70.     The Medical Payments Endorsement excludes coverage for "bodily injury" sustained by any person while "occupying" a "non-owned auto" without the express of implied permission of the "owner."

71.     There is an actual and justiciable controversy as to whether Artisan owes BEI or Bottger coverage for "bodily injury" sustained while "occupying" a "non-owned auto" without the express of implied permission of the "owner," including the Powers.

72.     The Medical Payments Endorsement defines "owner" as the person or organization who, with respect to the vehicle, holds title to the vehicle, had legal possession of the vehicle that is subject to a written security agreement with an original term of six (6) months or more, or has legal possession of the vehicle that is leased to that person or organization under a written agreement for a continuous period of six (6) months.

73.     There is an actual and justiciable controversy as to whether the BEI or Bottger qualifies as an "owner" as defined under the Medical Payments Endorsement.

74.     The Artisan Policy provides that its insurance is excess when an auto is insured under another insurance policy.

75.     There is an actual and justiciable controversy as to whether Artisan is excess of the other policies involved, if Artisan provides any coverage at all.

76.     There is an actual and justiciable controversy as to whether there is coverage available to BEI under the Artisan Policy.

77.     In addition to the provisions cited above, Artisan pleads all other conditions, terms, provisions, limitations, definitions, and exclusions of the Artisan Policy, which also may be found

to be applicable to Artisan's investigation and defense of these claims, and Artisan reserves the right to amend its Complaint for Declaratory Judgment as additional and/or more specific information becomes available.

## VI.    CLAIM FOR DECLARATORY JUDGMENT

78.    Artisan incorporates the allegations set forth in the preceding paragraphs as if fully set forth herein.

79.    Pursuant to 28 U.S.C. §§ 2201 and 2202, Artisan seeks a judicial declaration of its rights and duties under the Artisan Policy.

80.    Plaintiff Artisan is entitled to Declaratory Judgment in its favor, specifically including a judicial determination that it does not owe any coverage to BEI and Bottger under the Artisan Policy for the claims arising out of the automobile accident that is the subject of this case.

## VII.    REQUEST FOR RELIEF

WHEREFORE, Artisan, having specifically alleged the foregoing, now requests for the following relief:

81.    For a determination of the rights and obligations of the parties hereto under the Artisan Policy.

82.    For a declaration that Artisan does not owe any coverage or indemnity obligations to BEI and Bottger under the Artisan Policy for the subject accident.

83.    For all interest as allowed by applicable law.

84.    For attorney's fees and costs allowed by applicable statute and law.

85.    For other and further relief as the Court deems just and equitable.

DATED:  October 14, 2020

Isaac N. Sutphin, P.C. (Wyo. Bar No. 6-3711)
Macrina M. Jerabek (Wyo. Bar No. 7-5757)
HOLLAND & HART LLP
2515 Warren Avenue, Suite 450
P.O. Box 1347
Cheyenne, WY 82003
Telephone: (307) 778-4200
Facsimile: (307) 778-8175
insutphin@hollandhart.com
mmjerabek@hollandhart.com

ATTORNEYS FOR PLAINTIFF
ARTISAN AND TRUCKERS CASUALTY
COMPANY

15567469_v1