Galen B. Woelk
Alan G. Harding
BROWN & HISER, LLC
163 N. 4ᵗʰ St.
P.O. Box 971
Laramie, WY  82073-0971
Telephone:   (307) 745-7358
Facsimile:  (307) 745-7385
gwoelk@brownandhiser.law
aharding@brownandhiser.law

ATTORNEYS FOR DEFENDANTS
BOTTGER ENTERPRISES INC. and STEVE H. BOTTGER

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| ARTISAN AND TRUCKERS CASUALTY COMPANY, a foreign insurer, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil Action No. **20-CV-190-J** |
| | ) |
| BOTTGER ENTERPRISES INC., a Wyoming Corporation; and STEVE H. BOTTGER, an individual person, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| BOTTGER ENTERPRISES INC., a Wyoming Corporation; and STEVE H. BOTTGER, an individual person, | ) |
| | ) |
| Counter-Claimants, | ) |
| | ) |
| vs. | ) |
| | ) |
| ARTISAN AND TRUCKERS CASUALTY COMPANY, a foreign insurer, | ) |
| | ) |
| CounteDefendants. | ) |

## ANSWER AND COUNTERCLAIMS

**COMES NOW** Defendants BOTTGER ENTERPRISES, INC. and STEVE H. BOTTGER, [collectively "Defendants"], by and through their attorneys BROWN & HISER, LLC, and in Answer to Plaintiff's AMENDED COMPLAINT FOR DECLARATORY RELIEF ["Complaint"], admit, allege and deny as follows:

1.    In response to paragraph 1 of said Complaint, Defendants admit Plaintiff seeks a declaration of rights with regard to specific questions they pose in the Complaint, but otherwise deny that the questions Plaintiff recites in paragraph 1 are dispositive, are inclusive of all issues, or reflect the proper scope of inquiry for this Court to declare the parties' respective rights.

2.    In response to paragraph 2 of said Complaint, Defendants admit Plaintiff seeks a determination of its duties with regard to specific questions they pose in the Complaint, but otherwise deny that the questions or determinations that Plaintiff recites in paragraph 2 are dispositive, are inclusive of all issues, or reflect the proper scope of inquiry for this Court to declare or determine the parties' respective rights.

3.    Defendants are without personal knowledge as to the truth of the allegations and facts set forth in paragraph 3 of said Complaint, and therefore deny the same.

4.    Defendants admit paragraph 4 of Plaintiff's said Complaint.

5.    Defendants admit paragraph 5 of Plaintiff's said Complaint.

6.    The allegations of paragraph 6 of Plaintiff's Complaint are allegations of law as to which no responsive pleading is required, and Defendants admit that "the amount in controversy exceeds $75,000.00, exclusive of interest and costs."

7.    The allegations of paragraph 7 of Plaintiff's Complaint are allegations of law as to which no responsive pleading is required.

8.      Defendants admit paragraph 8 of Plaintiff's said Complaint.

9.      Defendants admit paragraph 9 of Plaintiff's said Complaint.

10.     Defendants admit paragraph 10 of Plaintiff's said Complaint.

11.     Defendants generally admit the factual averments described in paragraph 11 of Plaintiff's said Complaint, but deny that those averments are inclusive of all relevant facts associated with the referenced contact and events of that day.

12.     Defendants generally admit the factual averments described in paragraph 12 of Plaintiff's said Complaint, but deny that those averments are inclusive of all relevant facts associated with the referenced contact and events of that day.

13.     Defendants generally admit the factual averments described in paragraph 13 of Plaintiff's said Complaint, but deny that those averments are inclusive of all relevant facts associated with the referenced contact and events of that day.

14.     Defendants generally admit the factual averments described in paragraph 14 of Plaintiff's said Complaint, but deny that those averments are inclusive of all relevant facts associated with the referenced contact and events of that day.

15.     Defendants admit that they subsequently discovered from Plaintiffs that Powers had not insured the F-350; and Defendants are without knowledge of whether the F-350 was "registered" by Powers, and therefore deny the same.

16.     Defendants generally admit the factual averments described in paragraph 16 of Plaintiff's said Complaint, but deny that those averments are inclusive of all relevant facts associated with the referenced events of that day, and deny that Bottger was traveling westbound on WY-230.

17.     Defendants generally admit the factual averments described in paragraph 17 of

Plaintiff's said Complaint, but deny that those averments are inclusive of all relevant facts associated with the referenced events of that day.

18.     Defendants generally admit the factual averments described in paragraph 18 of Plaintiff's said Complaint, but would reference and refer to the Wyoming State Highway Patrol accident and fatality reports and investigations which most accurately reflect and are inclusive of all relevant facts associated with the multi-vehicle accident that occurred on September 30, 2019.

19.     Defendants generally admit the factual averments described in paragraph 19 of Plaintiff's said Complaint, but would reference and refer to the Wyoming State Highway Patrol accident and fatality reports and investigations which most accurately reflect and are inclusive of all relevant facts associated with the multi-vehicle accident that occurred on September 30, 2019.

20.     Defendants generally admit the factual averments described in paragraph 20 of Plaintiff's said Complaint, but would reference and refer to the Wyoming State Highway Patrol accident and fatality reports and investigations which most accurately reflect and are inclusive of all relevant facts associated with the multi-vehicle accident that occurred on September 30, 2019.

21.     Defendants generally admit the factual averments described in paragraph 21 of Plaintiff's said Complaint, but would reference and refer to the Wyoming State Highway Patrol accident and fatality reports and investigations which most accurately reflect and are inclusive of all relevant facts associated with the multi-vehicle accident that occurred on September 30, 2019.

22.     Defendants generally admit the factual averments described in paragraph 22 of Plaintiff's said Complaint, but would reference and refer to the Wyoming State Highway Patrol accident and fatality reports and investigations which most accurately reflect and are inclusive of all relevant facts associated with the multi-vehicle accident that occurred on September 30, 2019.

23.     Defendants generally admit the factual averments described in paragraph 23 of Plaintiff's said Complaint, but would reference and refer to the Wyoming State Highway Patrol accident and fatality reports and investigations which most accurately reflect and are inclusive of all relevant facts associated with the multi-vehicle accident that occurred on September 30, 2019.

24.     Defendants generally admit the factual averments described in paragraph 24 of Plaintiff's said Complaint, but would reference and refer to the Wyoming State Highway Patrol accident and fatality reports and investigations which most accurately reflect and are inclusive of all relevant facts associated with the multi-vehicle accident that occurred on September 30, 2019.

25.     Defendants generally admit the factual averments described in paragraph 25 of Plaintiff's said Complaint, but would reference and refer to the Wyoming State Highway Patrol accident and fatality reports and investigations which most accurately reflect and are inclusive of all relevant facts associated with the multi-vehicle accident that occurred on September 30, 2019.

26.     Defendants generally admit the factual averments described in paragraph 26 of Plaintiff's said Complaint, but would reference and refer to the Wyoming State Highway Patrol accident and fatality reports and investigations which most accurately reflect and are inclusive of all relevant facts associated with the multi-vehicle accident that occurred on September 30, 2019.

27.     Defendants admit paragraph 27 of Plaintiff's said Complaint.

28.     Defendants deny paragraph 28 of Plaintiff's said Complaint.

29.     Defendants admit that Plaintiff has denied or otherwise refused to provide its insured with UIM or MedPay coverage as set forth in paragraph 29; and all other allegations set forth in paragraph 29 are denied.

30.     Defendants admit they have "disputed Artisan's conclusions" as set forth in

paragraphs 29 and 30 of the Complaint; and deny that Artisan has ever maintained any uniform "coverage position" as set forth in paragraphs 29 and 30 of the Complaint.

31.    Defendants admit Artisan filed its first Complaint on October 14, 2020 and admit Plaintiff sought a declaration of rights with regard to specific questions they posed in that Complaint, but otherwise deny that the questions Plaintiff recites in paragraph 31 are dispositive, are inclusive of all issues, or reflect the proper scope of inquiry for this Court to declare the parties' respective rights.

32.    Defendants admit paragraph 32 of Plaintiff's said Complaint.

33.    Defendants are without personal knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 33 of the Complaint, and therefore deny the same.

34.    Defendants deny the averments set forth in paragraph 34 of Plaintiff's said Complaint, as Defendants' claims and tender of defense under its Artisan policy of insurance are valid and insurable, and Plaintiff's statement that there is no coverage reflect its continued breach of its covenant of good faith and fair dealing it has towards its insured, and its continuation of its bad faith towards its insured, by forcing its insured to litigate its claims, exploiting its insured's vulnerable financial position, and by imposing burdensome demands on its insured which are not contained in the policy of insurance.

35.    Defendants deny the averments set forth in paragraph 35 of Plaintiff's said Complaint, particularly because Defendants have and will incur substantial damages, and will be individually liable for those damages, as a result of Artisan's continued breach of its covenant of good faith and fair dealing it has towards its insured, its denial of coverage and policy benefits to its insured, and

Artisan's continuation of its bad faith towards its insured, by forcing its insured to litigate its claims, exploiting its insured's vulnerable financial position, and by imposing burdensome cost of defense and attorney fee liability on its insured by its having to respond and defend Artisan's lawsuit with little or no resources.

36.    In response to paragraph 36 of said Complaint, Defendants admit that the *Artisan Policy* referenced in paragraph 36 is effective and speaks for itself.  All remaining allegations set forth in paragraph 36 that attempt to memorialize what the document reflects, concerns, pertains to, provides for, names as beneficiaries or which might imply how referenced policy language should be defined, are denied.

37.    In response to paragraph 37 of the Complaint, Defendants admit Artisan declined coverage for defense of the Declaratory Judgment Action.  All remaining allegations set forth in paragraph 37 that attempt to memorialize what the reasons were, or what coverage was available, or what Artisan advised, are denied.

38.    Defendants admit paragraph 38 of Plaintiff's said Complaint.

39.    In response to paragraph 39 of said Complaint, Defendants admit that the named insured under the *Artisan Policy* is as defined and provided for in the *Artisan Policy*, which is effective and speaks for itself.

40.    In response to paragraph 40 of said Complaint, Defendants admit that the *Artisan Policy* referenced and quoted in paragraph 40 is effective and speaks for itself.  All remaining allegations set forth in paragraph 40 that attempt to memorialize what the document reflects, concerns, pertains to, provides for, names as beneficiaries or which might imply that the quoted language is inclusive of all terms and conditions of the Policy, are denied.

41.     In response to paragraph 41 of said Complaint, Defendants admit that the *Artisan Policy* referenced and quoted in paragraph 41 is effective and speaks for itself.  All remaining allegations set forth in paragraph 41 that attempt to memorialize what the document reflects, concerns, pertains to, provides for, names as beneficiaries or which might imply that the quoted language is inclusive of all terms and conditions of the Policy, are denied.

42.     Defendants admit paragraph 42 of Plaintiff's said Complaint.

43.     In response to paragraph 43 of said Complaint, Defendants admit that the *Artisan Policy* referenced and quoted in paragraph 43 is effective and speaks for itself.  All remaining allegations set forth in paragraph 43 that attempt to memorialize what the document reflects, concerns, pertains to, provides for, names as beneficiaries or which might imply that the quoted language is inclusive of all terms and conditions of the Policy, are denied.

44.     In response to paragraph 44 of said Complaint, Defendants admit that the *Artisan Policy* referenced and quoted in paragraph 44 is effective and speaks for itself.  All remaining allegations set forth in paragraph 44 that attempt to memorialize what the document reflects, concerns, pertains to, provides for, names as beneficiaries or which might imply that the quoted language is inclusive of all terms and conditions of the Policy, are denied.

45.     In response to paragraph 45 of said Complaint, Defendants admit that the *Artisan Policy* referenced and quoted in paragraph 45 is effective and speaks for itself.  All remaining allegations set forth in paragraph 45 that attempt to memorialize what the document reflects, concerns, pertains to, provides for, names as beneficiaries or which might imply that the quoted language is inclusive of all terms and conditions of the Policy, are denied.

46.     Defendants admit paragraph 46 of Plaintiff's said Complaint.

47.    In response to paragraph 47 of said Complaint, Defendants admit that the *Artisan Policy* referenced and quoted in paragraph 47 is effective and speaks for itself.  All remaining allegations set forth in paragraph 47 that attempt to memorialize what the document reflects, concerns, pertains to, provides for, names as beneficiaries or which might imply that the quoted language is inclusive of all terms and conditions of the Policy, are denied.

48.    In response to paragraph 48 of said Complaint, Defendants admit that the *Artisan Policy* referenced and quoted in paragraph 48 is effective and speaks for itself.  All remaining allegations set forth in paragraph 48 that attempt to memorialize what the document reflects, concerns, pertains to, provides for, names as beneficiaries or which might imply that the quoted language is inclusive of all terms and conditions of the Policy, are denied.

49.    In response to paragraph 49 of said Complaint, Defendants admit that the *Artisan Policy* referenced and quoted in paragraph 49 is effective and speaks for itself.  All remaining allegations set forth in paragraph 49 that attempt to memorialize what the document reflects, concerns, pertains to, provides for, names as beneficiaries or which might imply that the quoted language is inclusive of all terms and conditions of the Policy, are denied.

50.    In response to paragraph 50 of said Complaint, Defendants incorporate herein all of their responses and answers to the allegations of paragraphs 1 through 104 of Plaintiff's Complaint.

51.    In response to paragraph 51 of said Complaint, Defendants admit that the *Artisan Policy* referenced and quoted in paragraph 51 is effective and speaks for itself.  All remaining allegations set forth in paragraph 51 that attempt to memorialize how terms in the documents should be defined or what the document reflects, concerns, pertains to, provides coverage for, or insures as a beneficiary, are denied.

52.     Defendants deny the averments set forth in paragraph 52 of Plaintiff's said Complaint, as Defendants' claims under its Artisan policy of insurance are valid and insurable, and Plaintiff's suggestion that a "justiciable controversy" exists is pretextual, is a continuation of its bad faith towards its insured, and is reflective of Plaintiff's effort to avoid providing coverage that its insured paid for and is owed.

53.     In response to paragraph 53 of said Complaint, Defendants admit that the *Artisan Policy* and Endorsement language referenced and quoted in paragraph 53 is effective and speaks for itself.  All remaining allegations set forth in paragraph 53 that attempt to memorialize how terms in the documents should be defined or what the document reflects, concerns, pertains to, provides coverage for, or insures as a beneficiary, are denied.

54.     Defendants deny the averments set forth in paragraph 54 of Plaintiff's said Complaint, as Defendants' claims under its *Artisan Policy* of insurance are valid and insurable, and Plaintiff's suggestion that a "justiciable controversy" exists is pretextual, is a continuation of its bad faith towards its insured, and is reflective of Plaintiff's effort to avoid providing coverage that its insured paid for and is owed.

55.     In response to paragraph 55 of said Complaint, Defendants admit that the *Artisan Policy* and Endorsement language referenced and quoted in paragraph 55 is effective and speaks for itself.  All remaining allegations set forth in paragraph 55 that attempt to memorialize how terms in the documents should be defined or what the document reflects, concerns, pertains to, provides coverage for, or insures as a beneficiary, are denied.

56.     Defendants deny the averments set forth in paragraph 56 of Plaintiff's said Complaint, as Defendants' claims under its Artisan policy of insurance are valid and insurable, and Plaintiff's

suggestion that a "justiciable controversy" exists is pretextual, is a continuation of its bad faith towards its insured, and is reflective of Plaintiff's effort to avoid providing coverage that its insured paid for and is owed.

57.    In response to paragraph 57 of said Complaint, Defendants admit that the *Artisan Policy* and Endorsement language referenced and quoted in paragraph 57 is effective and speaks for itself.  All remaining allegations set forth in paragraph 57 that attempt to memorialize how terms in the documents should be defined or what the document reflects, concerns, pertains to, provides coverage for, or insures as a beneficiary, are denied.

58.    Defendants deny the averments set forth in paragraph 58 of Plaintiff's said Complaint, as Defendants' claims under its Artisan policy of insurance are valid and insurable, and Plaintiff's suggestion that a "justiciable controversy" exists is pretextual, is a continuation of its bad faith towards its insured, and is reflective of Plaintiff's effort to avoid providing coverage that its insured paid for and is owed.

59.    In response to paragraph 59 of said Complaint, Defendants admit that the *Artisan Policy* and Endorsement language referenced and quoted in paragraph 59 is effective and speaks for itself.  All remaining allegations set forth in paragraph 59 that attempt to memorialize how terms in the documents should be defined or what the document reflects, concerns, pertains to, provides coverage for, or insures as a beneficiary, are denied.

60.    Defendants deny the averments set forth in paragraph 60 of Plaintiff's said Complaint, as Defendants' claims under its Artisan policy of insurance are valid and insurable, and Plaintiff's suggestion that a "justiciable controversy" exists is pretextual, is a continuation of its bad faith towards its insured, and is reflective of Plaintiff's effort to avoid providing coverage that its insured

paid for and is owed.

61.    In response to paragraph 61 of said Complaint, Defendants admit that the *Artisan Policy* and Endorsement language referenced and quoted in paragraph 61 is effective and speaks for itself.  All remaining allegations set forth in paragraph 61 that attempt to memorialize how terms in the documents should be defined or what the document reflects, concerns, pertains to, provides coverage for, or insures as a beneficiary, are denied.

62.    Defendants deny the averments set forth in paragraph 62 of Plaintiff's said Complaint, as Defendants' claims under its Artisan policy of insurance are valid and insurable, and Plaintiff's suggestion that a "justiciable controversy" exists is pretextual, is a continuation of its bad faith towards its insured, and is reflective of Plaintiff's effort to avoid providing coverage that its insured paid for and is owed.

63.    In response to paragraph 63 of said Complaint, Defendants admit that the *Artisan Policy* and Endorsement language referenced and quoted in paragraph 63 is effective and speaks for itself.  All remaining allegations set forth in paragraph 61 that attempt to memorialize how terms in the documents should be defined or what the document reflects, concerns, pertains to, provides coverage for, or insures as a beneficiary, are denied.

64.    Defendants deny the averments set forth in paragraph 64 of Plaintiff's said Complaint, as Defendants' claims under its Artisan policy of insurance are valid and insurable, and Plaintiff's suggestion that a "justiciable controversy" exists is pretextual, is a continuation of its bad faith towards its insured, and is reflective of Plaintiff's effort to avoid providing coverage that its insured paid for and is owed.

65.    In response to paragraph 65 of said Complaint, Defendants admit that the *Artisan*

*Policy* and Endorsement language referenced and quoted in paragraph 65 is effective and speaks for itself.  All remaining allegations set forth in paragraph 65 that attempt to memorialize how terms in the documents should be defined or what the document reflects, concerns, pertains to, provides coverage for, or insures as a beneficiary, are denied.

66.     Defendants deny the averments set forth in paragraph 66 of Plaintiff's said Complaint, as Defendants' claims under its Artisan policy of insurance are valid and insurable, and Plaintiff's suggestion that a "justiciable controversy" exists is pretextual, is a continuation of its bad faith towards its insured, and is reflective of Plaintiff's effort to avoid providing coverage that its insured paid for and is owed.

67.     In response to paragraph 67 of said Complaint, Defendants admit that the *Artisan Policy* and Endorsement language referenced and quoted in paragraph 67 is effective and speaks for itself.  All remaining allegations set forth in paragraph 67 that attempt to memorialize how terms in the documents should be defined or what the document reflects, concerns, pertains to, provides coverage for, or insures as a beneficiary, are denied.

68.     Defendants deny the averments set forth in paragraph 68 of Plaintiff's said Complaint, as Defendants' claims under its Artisan policy of insurance are valid and insurable, and Plaintiff's suggestion that a "justiciable controversy" exists is pretextual, is a continuation of its bad faith towards its insured, and is reflective of Plaintiff's effort to avoid providing coverage that its insured paid for and is owed.

69.     In response to paragraph 69 of said Complaint, Defendants admit that the *Artisan Policy* and Endorsement language referenced and quoted in paragraph 69 is effective and speaks for itself.  All remaining allegations set forth in paragraph 69 that attempt to memorialize how terms in

the documents should be defined or what the document reflects, concerns, pertains to, provides coverage for, or insures as a beneficiary, are denied.

70.     Defendants deny the averments set forth in paragraph 70 of Plaintiff's said Complaint, as Defendants' claims under its Artisan policy of insurance are valid and insurable, and Plaintiff's suggestion that a "justiciable controversy" exists is pretextual, is a continuation of its bad faith towards its insured, and is reflective of Plaintiff's effort to avoid providing coverage that its insured paid for and is owed.

71.     Defendants deny the averments set forth in paragraph 71 of Plaintiff's said Complaint, as Defendants' claims under its Artisan policy of insurance are valid and insurable, and Plaintiff's suggestion that a "justiciable controversy" exists is pretextual, is a continuation of its bad faith towards its insured, and is reflective of Plaintiff's effort to avoid providing coverage that its insured paid for and is owed.

72.     In response to paragraph 72 of said Complaint, Defendants admit that the *Artisan Policy* and Endorsement language referenced and quoted in paragraph 72 is effective and speaks for itself.  All remaining allegations set forth in paragraph 72 that attempt to memorialize how terms in the documents should be defined or what the document reflects, concerns, pertains to, provides coverage for, or insures as a beneficiary, are denied.

73.     Defendants deny the averments set forth in paragraph 73 of Plaintiff's said Complaint, as Defendants' claims under its Artisan policy of insurance are valid and insurable, and Plaintiff's suggestion that a "justiciable controversy" exists is pretextual, is a continuation of its bad faith towards its insured, and is reflective of Plaintiff's effort to avoid providing coverage that its insured paid for and is owed.

74.    In response to paragraph 74 of said Complaint, Defendants admit that the *Artisan Policy* and Endorsement language referenced and quoted in paragraph 74 is effective and speaks for itself.  All remaining allegations set forth in paragraph 74 that attempt to memorialize how terms in the documents should be defined or what the document reflects, concerns, pertains to, provides coverage for, or insures as a beneficiary, are denied.

75.    In response to Paragraph 75 of the Complaint, Defendants deny that the Ford F-350 is not listed on the Declarations page of the *Artisan Policy*, since the Ford F-350 was and is defined as a *temporary substitute vehicle*, substituting or replacing  –  per Policy  –  a previously identified F-150 owned by Defendants, and which was listed on the referenced Declarations page.

76.    In response to paragraph 76 of said Complaint, Defendants admit that the *Artisan Policy* and Endorsement language referenced and quoted in paragraph 76 is effective and speaks for itself.  All remaining allegations set forth in paragraph 76 that attempt to memorialize how terms in the documents should be defined or what the document reflects, concerns, pertains to, provides coverage for, or insures as a beneficiary, are denied.

77.    Defendants deny the averments set forth in paragraph 77 of Plaintiff's said Complaint, as Defendants' claims under its Artisan policy of insurance are valid and insurable, and Plaintiff's suggestion that a "justiciable controversy" exists is pretextual, is a continuation of its bad faith towards its insured, and is reflective of Plaintiff's effort to avoid providing coverage that its insured paid for and is owed.

78.    In response to paragraph 78 of said Complaint, Defendants admit that the *Artisan Policy* and Endorsement language referenced and quoted in paragraph 78 is effective and speaks for itself.  All remaining allegations set forth in paragraph 78 that attempt to memorialize how terms in

the documents should be defined or what the document reflects, concerns, pertains to, provides coverage for, or insures as a beneficiary, are denied.

79.    Defendants deny the averments set forth in paragraph 79 of Plaintiff's said Complaint, as Defendants' claims under its Artisan policy of insurance are valid and insurable, and Plaintiff's suggestion that a "justiciable controversy" exists is pretextual, is a continuation of its bad faith towards its insured, and is reflective of Plaintiff's effort to avoid providing coverage that its insured paid for and is owed.

80.    In response to paragraph 80 of said Complaint, Defendants admit that the *Artisan Policy* and Endorsement language referenced and quoted in paragraph 80 is effective and speaks for itself.  All remaining allegations set forth in paragraph 80 that attempt to memorialize how terms in the documents should be defined or what the document reflects, concerns, pertains to, provides coverage for, or insures as a beneficiary, are denied.

81.    Defendants deny the averments set forth in paragraph 81 of Plaintiff's said Complaint, as Defendants' claims under its Artisan policy of insurance are valid and insurable, and Plaintiff's suggestion that a "justiciable controversy" exists is pretextual, is a continuation of its bad faith towards its insured, and is reflective of Plaintiff's effort to avoid providing coverage that its insured paid for and is owed.

82.    In response to paragraph 82 of said Complaint, Defendants admit that the *Artisan Policy* and Endorsement language referenced and quoted in paragraph 82 is effective and speaks for itself.  All remaining allegations set forth in paragraph 82 that attempt to memorialize how terms in the documents should be defined or what the document reflects, concerns, pertains to, provides coverage for, or insures as a beneficiary, are denied.

83.     In response to paragraph 83 of said Complaint, Defendants admit that the *Artisan Policy* and Endorsement language referenced and quoted in paragraph 83 is effective and speaks for itself.  All remaining allegations set forth in paragraph 83 that attempt to memorialize how terms in the documents should be defined or what the document reflects, concerns, pertains to, provides coverage for, or insures as a beneficiary, are denied.

84.     Defendants deny the averments set forth in paragraph 84 of Plaintiff's said Complaint, as Defendants' claims under its Artisan policy of insurance are valid and insurable, and Plaintiff's suggestion that a "justiciable controversy" exists is pretextual, is a continuation of its bad faith towards its insured, and is reflective of Plaintiff's effort to avoid providing coverage that its insured paid for and is owed.

85.     In response to paragraph 85 of said Complaint, Defendants admit that the *Artisan Policy* and Endorsement language referenced and quoted in paragraph 85 is effective and speaks for itself.  All remaining allegations set forth in paragraph 85 that attempt to memorialize how terms in the documents should be defined or what the document reflects, concerns, pertains to, provides coverage for, or insures as a beneficiary, are denied.

86.     Defendants deny the averments set forth in paragraph 86 of Plaintiff's said Complaint, as Defendants' claims under its Artisan policy of insurance are valid and insurable, and Plaintiff's suggestion that a "justiciable controversy" exists is pretextual, is a continuation of its bad faith towards its insured, and is reflective of Plaintiff's effort to avoid providing coverage that its insured paid for and is owed.

87.     In response to paragraph 87 of said Complaint, Defendants admit that the *Artisan Policy* and Endorsement language referenced and quoted in paragraph 87 is effective and speaks for

itself. All remaining allegations set forth in paragraph 87 that attempt to memorialize how terms in the documents should be defined or what the document reflects, concerns, pertains to, provides coverage for, or insures as a beneficiary, are denied.

88. Defendants deny the averments set forth in paragraph 88 of Plaintiff's said Complaint, as Defendants' claims under its Artisan policy of insurance are valid and insurable, and Plaintiff's suggestion that a "justiciable controversy" exists is pretextual, is a continuation of its bad faith towards its insured, and is reflective of Plaintiff's effort to avoid providing coverage that its insured paid for and is owed.

89. Defendants deny the averments set forth in paragraph 89 of Plaintiff's said Complaint, as Defendants' claims and tender of defense under its *Artisan Policy* of insurance are valid and insurable, and Plaintiff's statement that it is just attempting to determine whether there is "coverage available" reflects its continued breach of its covenant of good faith and fair dealing it has towards its insured, and its continuation of its bad faith towards its insured, by forcing its insured to litigate its claims, exploiting its insured's vulnerable financial position, and by imposing burdensome demands on its insured which are not contained in the policy of insurance.

90. Defendants deny the averments set forth in paragraph 90 of Plaintiff's said Complaint, particularly since Artisan has refused and declined to defend any claim or lawsuit for damages covered by the insuring agreement the Defendants purchased and own.

91. Defendants deny the averments set forth in paragraph 91 of Plaintiff's said Complaint, as Defendants' claims and tender of defense under its *Artisan Policy* of insurance are valid and insurable, and Plaintiff's statement that it is just attempting to determine whether its insured's claims are covered by the insuring agreement reflects its continued breach of its covenant of good faith and

fair dealing it has towards its insured, and its continuation of its bad faith towards its insured, by forcing its insured to litigate its claims, exploiting its insured's vulnerable financial position, and by imposing burdensome demands on its insured which are not contained in the *Artisan Policy* of insurance.

92.    In response to paragraph 92 of said Complaint, Defendants admit that the *Artisan Policy* and Endorsement language referenced and quoted in paragraph 92 is effective and speaks for itself.  All remaining allegations set forth in paragraph 92 that attempt to memorialize how terms in the documents should be defined or what the document reflects, concerns, pertains to, provides coverage for, or insures as a beneficiary, are denied.

93.    Defendants deny the averments set forth in paragraph 93 of Plaintiff's said Complaint, as Defendants' claims under its *Artisan Policy* of insurance are valid and insurable, and Plaintiff's suggestion that a "justiciable controversy" exists is pretextual, is a continuation of its bad faith towards its insured, and contradicts Artisan's own adjustor's representations to Defendants that excess coverage in this case was accepted and approved.

94.    In responding to paragraph 94 of Plaintiff's Complaint, Defendants state that the allegations contained therein are allegations of opinion or theories or interpretations of law or contract,  and therefore do not require an answer.  To the extent an answer is required, Defendants deny the same.

95.    In response to paragraph 95 of said Complaint, Defendants incorporate herein all of their responses and answers to the allegations of paragraphs 1 through 104 of Plaintiff's Complaint

96.    In responding to paragraph 96 of Plaintiff's Complaint, Defendants state that the allegations contained therein are allegations of opinion or theories or interpretations of law or

contract, and therefore do not require an answer. To the extent an answer is required, Defendants deny the same.

97.    In responding to paragraph 97 of Plaintiff's Complaint, Defendants state that the allegations contained therein are allegations of opinion or theories or interpretations of law or contract, and therefore do not require an answer. To the extent an answer is required, Defendants deny the same.

98.    In responding to paragraph 98 of Plaintiff's Complaint, Defendants state that the allegations contained therein are allegations of opinion or theories or interpretations of law or contract, and therefore do not require an answer. To the extent an answer is required, Defendants deny the same.

99.    In responding to paragraph 99 of Plaintiff's Complaint, Defendants states that the allegations made therein is in the form of a prayer for relief to which Defendants are not required to answer. To the extent an answer is required, Defendants deny the same.

100.    In responding to paragraph 100 of Plaintiff's Complaint, Defendants states that the allegations made therein is in the form of a prayer for relief to which Defendants are not required to answer. To the extent an answer is required, Defendants deny the same.

101.    In responding to paragraph 101 of Plaintiff's Complaint, Defendants states that the allegations made therein is in the form of a prayer for relief to which Defendants are not required to answer. To the extent an answer is required, Defendants deny the same.

102.    In responding to paragraph 102 of Plaintiff's Complaint, Defendants states that the allegations made therein is in the form of a prayer for relief to which Defendants are not required to answer. To the extent an answer is required, Defendants deny the same.

103.   In responding to paragraph 103 of Plaintiff's Complaint, Defendants states that the allegations made therein is in the form of a prayer for relief to which Defendants are not required to answer.  To the extent an answer is required, Defendants deny the same.

104.   In responding to paragraph 104 of Plaintiff's Complaint, Defendants states that the allegations made therein is in the form of a prayer for relief to which Defendants are not required to answer.  To the extent an answer is required, Defendants deny the same.

## **GENERAL DENIAL**

105.   With regard to the allegations  and the prayer for relief of Plaintiff's *Amended Complaint for Declaratory Relief*, Defendants deny each and every allegation thereof not specifically admitted herein.

## **DEFENDANTS' SEPARATE DEFENSES**

106.   For a further and separate defense, Defendants asserts that one or more of Plaintiff's claims are barred by principles of equity, including, estoppel, waiver, unclean hands and laches; and that Defendant's have waived, and should be estopped from asserting any and all of the litany of reasons, excuses, claims and alternative interpretations of the *Artisan Policy* by which it has attempted to justify its denial of its insured's claims in its Complaint; and should be limited and bound to those same reasons for its denial and rejection of its insured's claims, as previously provided to its insured, in response to its insured's demands for coverage.  Plaintiff's should be further estopped from arguing or suggesting that excess coverage was not exhausted or otherwise approved, when Plaintiff has previously acknowledged the applicability of UIM excess prerequisite coverage and consent.

107.   For a further and separate defense, Defendants assert that the Plaintiff's claims for

interpretation of the *Artisan Policy* in its favor could only result from ambiguity in the *Artisan Policy*, such that where the *Artisan Policy* is ambiguous and uncertain, it should be construed liberally in favor of Defendants and strictly against Plaintiff; and should the *Artisan Policy* be susceptible of two constructions, the one favorable to the Defendants should be adopted.

108.    Plaintiff's claims and actions should be barred as a result of its unfair claims settlement practices in violation of *Wyo. Stat.* § 26-13-124, its violation of *Wyo. Stat.* § 26-15-124, and as a result of its bad faith actions, including its (a) inadequate investigation of Defendants claims, its (b) suing its own insured and forcing its insured to litigate claims and coverage, its (c) deliberate misinterpretation of the *Artisan Policy* and publication of those misinterpretations to Defendants, its (d) attempts to impose burdensome requirements on Defendants in the investigatory process, and its (e) bad faith presentation of nuisance dollar amounts to Defendants in its efforts to obtain Defendants' release and waiver of benefits under its policy of insurance.

109.    For a further and separate defense, Defendants assert that Plaintiff's rights under the Declaratory Judgment Act as pertaining to the *Artisan Policy* of Insurance are limited to questions of construction and validity, such that the Declaratory Judgment Act does not provide Plaintiff's with an action to interject or create new terms or rights under a contract.

110.    Defendants reserve the right to assert any additional defenses pending further discovery and investigation in this matter.

**WHEREFORE,** Defendants pray that Plaintiff takes nothing by its claims alleged herein; that Defendants' Counterclaims asserted herein against Plaintiff be granted, and that judgment be entered in Defendants' favor, together with costs, attorneys' fees and such other relief as the Court may deem appropriate, the premises considered.

## COUNTERCLAIM

### Facts and Allegations Common to all Causes of Action

1.      Counterclaimaint Bottger Enterprises, Inc. is a Wyoming Corporation organized under the laws of the State of Wyoming, having a sole shareholder and principal.

2.      Counterclaimant Steve Bottger is the sole shareholder and owner of Bottger Enterprises, which provided drywall construction services throughout southern Wyoming. [Counterclaimant Bottger Enterprises, Inc. and its principal Steve Bottger, shall be collectively referred to herein as "Bottger", when not otherwise specifically identified by name.]

3.      In February of 2019, Bottger purchased a Progressive Policy of Commercial Auto Insurance, which Policy was identified by Policy Number 08432038-6, and which provided liability coverage of $1,000,000.00, Uninsured/Underinsured Motorist coverage of $1,000,000.00, and Medical Payments coverage of $5,000.00. [Such Policy is hereafter referred to as the "Bottger Policy."]

4.      The Bottger Policy listed and provided coverage for 9 separate vehicles making up Bottger's fleet of service vehicles.

5.      The Bottger Policy was underwritten by the Plaintiff / Counterdefendant herein named, Artisan and Truckers Casualty Co., [hereinafter referred to as "Artisan"].

6.      One of Bottger's insurance covered fleet vehicles, a 1994 Ford F-150 ["F-150"], in addition to its deteriorating and bad all-around condition, had been having significantly bad steering problems in August of 2019.

7.    As a result of the condition of the F-150, and the dangerous driving conditions it presented, Bottger's foreman stopped using the F-150 in September, 2019, and Bottger was required to withdraw the F-150 from company use and service.

8.    Upon withdrawal of the F-150 from service, Bottger began shopping for a used service truck to replace the F-150, and particularly so that Bottger's foreman would have a suitable company work truck to haul construction materials.

9.    Ray and Belinda Powers [collectively "Powers"] had been advertising the sale of their 1999 Ford F-350 flatbed dually ["F-350"] during September of 2019.

10.    Bottger became aware that Powers was trying to sell the F-350, and on September 30, 2019, while Steve Bottger was working in the course of his employment with Bottger Enterprises, contacted Powers for the purpose of test driving and having Bottger Enterprises purchase the F-350 for a price of $10,000.00.

11.    On September 30, 2019, Bottger intended to purchase Powers F-350 to replace Bottger's then out of service F-150.

12.    On September 30, 2019, Bottger, in the performance of his service and duties on behalf of Bottger Enterprises, arrived at Powers residence off of HWY 230 in Albany County, WY, was provided the keys to the F-350, and was given permission by Powers to test-drive the F-350.

13.    Bottger drove the F-350 for several miles, and upon determining the F-350 was in working order, intended to finalize the purchase of the F-350 from Powers upon returning to the Powers residence.  Bottger planned planned to make a down payment to Powers upon arrival at Power's residence, and to thereafter obtain the remainder of the purchase funds from Bottger Enterprises' bank to pay to Powers that day.

14.     On Bottger's return to Powers residence, Bottger was stopped on HWY 230 waiting for traffic to clear so that Bottger could make a left turn onto the road where Powers resided.

15.     While stopped, Bottger was rear ended by Brandon Chimenti at a high rate of speed, which collission precipitated a chain reaction of collisions with multiple other vehicles and commercial tractor trailers combinations.

16.     As a result of the accident, Bottger was gravely injured, as were several other drivers, including a victim whom was killed.

17.     Bottger was subsequently informed by Artisan that Powers had maintained no form of insurance coverage for the F-350 that he had given Bottger permission to drive on September 30, 2019.

18.     Steve Bottger was hospitalized for multiple days as a result of the accident, obtained numerous injuries and trauma, incurred medical bills as a result of the accident in excess of $75,000.00, and suffered special and other damages as a result of the accident in excess of several hundreds of thousands of dollars.

19.     Brandon Chimenti was deemed to be fully at fault and responsible for the accident that occurred on September 20, 2019.

20.     By telephone conference on October 28, 2020, Bottger notified Artisan adjustor Monica Stewart of his claim for insurance coverage under the Bottger Policy, was informed of an Artisan claim number that was assigned to Bottger, and was also informed that Stewart had been investigating the claims and could confirm that there was no insurance coverage on Powers vehicle, and that Artisan adjustor Robert Hansel would be the adjuster to resolve Bottger's UIM claims.

21.     On October 29, 2019 Artisan adjustor Gloria Massi contacted Bottger, informed Steve

Bottger that his medical payment claims were being reviewed, and requested that Bottger submit a medicare hold harmless letter for processing by Artisan.

22.    On November 12, 2019 Artisan adjustor Robert Hansel notified Bottger by letter that Artisan was investigating Bottger's potential UIM claims arising from the accident, and that its investigation was under reservation of rights to determine if UIM coverage and Medical Payment coverage would be afforded to Bottger.  Hansel notified Bottger that it was handling Bottger's claims with a reservation or rights, and notified Bottger that the reason for the reservation of rights was "*because the vehicle involved in the loss was not listed on the policy at the time of the loss.*"

23.    Artisan made no further inquiry of Bottger, and was unresponsive to Bottger for the next two months.

24.    It was not until January 13, 2019, that Artisan adjustor Steve Hoffman notified Bottger by letter that Bottger's claims were being "*handled under a reservation of rights*", and *"that the purpose of this letter is to advise you that a coverage issue has been identified because the involved truck is not listed on your policy.*"

25.    Eleven days later, on January 24, 2020, Artisan adjustor Gloria Massi notified Bottger by letter that Bottger's claims for Medical Payment Coverage were denied by Artisan, and that Bottger's Policy provided no coverage for Bottger's medical payment claims.  Massi informed Bottger that Artisan's "*investigation to date reveals Steve Bottger was not occupying your insured auto, temporary substitute auto, or a trailer while attached to an insured auto; therefore, he will not meet the definition of an insured as defined above.*"

26.    Bottger responded to Artisan's denial of Steve Bottger's medical payment coverage claims on February 3, 2020;  provided Artisan with a summary of all facts and information relevant

to Bottger having driven a *Temporary Substitute Auto* – as that term was defined by the Bottger Policy – at the time of the accident; formally requested that Artisan adjustor Massi provide all information and investigatory facts upon which Artisan's denial of coverage decision was made; and requested that Artisan reconsider its claim denial.

27.    A *Temporary Substitute Auto* is defined in the Bottger Policy as follows:

      14.    "**Temporary substitute auto**" means any **auto you** do not own while used with the permission of its owner as a temporary substitute for an **insured auto** that has been withdrawn from normal use due to breakdown, repair, servicing, loss or destruction. [emphasis in original]

28.    On February 4, 2020, Bottger provided Artisan adjustor Hansel with the notice required under the Bottger Policy to resolve Bottger's UIM coverage claim.  Bottger also provided Artisan with a request for consent to pursue claim exhaustion per the requirements of the UIM provisions of the Bottger Policy, and renewed Bottger's reqest that Artisan provide Bottger with a timely answer as to whether it would provide UIM coverage to Bottger under the Bottger Policy.

29.    On February 4, 2020, Artisan adjustor Massi informed Bottger by email to allow 24 to 48 hours for Artisan's review of Bottger's February 3, 2020 letter requests, and that clarification would then be provided.

30.    On February 7, 2020, Artisan adjustor Massi informed Bottger by email that Bottger's "*claim is still in review.  I will advise of the decision once the review is complete.*"  As of the date of this Counterclaim, Massi has never followed up, advised or provided Bottger with anything, and Artisan has ignored Bottger's requests that it provide Bottger with factual information upon which its claim denial decisions were made.

31.    On February 12, 2020, Bottger's counsel received a call from Artisan adjustor

Hoffman, and during that conversation Bottger's counsel provided Hoffman with factual information, and elaborated on those circumstances concerning the out of commission F-150, including the reasons for its being out of commission, the reason for Bottger's attempted purchase and driving of the F-350, the name of the Bottger employee who had previously used the F-150 but stopped using it because of its mechanical problems, provided Artisan an invitation to interview and meet with Bottger employee Steve Becker to confirm the prior withdrawal of the F-150 from service, and the location of the F-150 so that Artisan could inspect the F-150.  During that teleconference, Hoffman informed Bottger's counsel that Artisan was going to send the matter out for a "coverage opinion," and that Artisan would provide a timely answer with regard to coverage.

32.    42 additional days passed, during which time Artisan failed to inform Bottger of the status of Bottger's UIM claim for benefits under the Bottger Policy.

33.    On March 31, 2020, Bottger provided email communications to Artisan adjustors Hoffman and Massi, demanding that Artisan provide a timely answer to Bottger's claim requests, particularly because of those issues then pending in the pre-litigation proceedings underway among those multiple parties to the September 30, 2019 accident which gave rise to Bottger's claims.  As Bottger demanded of Artisan on March 31, 2020: "*The bottom-line is that we expect a response and position to be taken by Progressive in the very near future on this matter, so that my client can properly protect his interests, and negotiate and present during the upcoming pre-litigation.  It is absolutely necessary that my client understand whether or not he has UIM coverage under his policy so that we can properly proceed in the underlying litigation, or otherwise seek a declaration with the Courts as to the existence of coverage under his policy.*"

34.    Despite Artisan having knowledge of Bottger's ongoing negotiations and pre-

litigation settlement matters with the numerous parties in the underlying action that resulted from

the September 30, 2019 accident, [which Artisan was well aware of from notice by Bottger's liability

attorney, retained by Artisan to defend Bottger's liability interests under reservation, *i.e.* Zenith

Ward, Esq.], Artisan remained un-responsive to Bottger, and ignored Bottger's communications and

requests for claim coverage under the Bottger Policy for another 38 days – i.e. from March 31, 2020

through May 8, 2020.

35.     On May 8, 2020, Artisan adjustor Hoffman delivered Artisan's claim denial letter to

Bottger in duplicate [for Steve Bottger and Bottger Enterprises].

36.     Significant to Hoffman's May 8, 2020 letter  to Bottger explaining Artisan's denial

of claims, Artisan informed  Bottger as follows:

> "*The correspondence dated February 3, 2020 states that 'Bottger Enterprises sought to purchase the F-350 to replace the 1994 Ford F-150' and that the '1994 Ford F-150 . . . was withdrawn . . . as a result of its bad all-around condition.'  However, as detailed above, **it is clear the F-350 was not acquired by BEI prior to the accident**.*"
> [emphasis supplied.]

37.     As set forth in the Bottger Policy definition for a *Temporary substitute vehicle*, there

was no Bottger Policy requirement that the F-350, as a temporary substitute vehicle being used by

Bottger, was required to have been  "*acquired by BEI prior to the accident.*"  Hoffman and Artisan's

creation of this new requirement, and their reliance on that requirement as the supportive reasoning

for its disqualification of Bottger's claims was invented, and pretextually utilized to deny Bottger's

claims for the coverage he was entitled to.

38.     Apparently not satisfied with the explanations and semantics utilized in their two May

8, 2020 letters, Hoffman and Artisan sent Bottger an additional and new claim denial letter on May

16, 2020, which letter effectively repeats many of Artisan's same claim denials, but which modifies

language previously provided in the May 8 letter, and which provides several additional reasons for Artisan's denial of Bottger's UIM and MedPay claims.

39.     In addition to Artisan's improper reasons for denial of Bottger's claims in its May 8, 2020 letter, Hoffman's May 16, 2020 letter included the following self serving or otherwise false statements:

a.     "*There is no evidence that any of the motor vehicles involved in the accident are underinsured or uninsured.*"  Not only had Artisan been previously provided with sufficient information necessary for it to know that Chimenti's vehicle was underinsured, but Artisan had retained separate counsel to represent Bottger against liability claims arising from the accident who was well aware of and had informed Artisan of the UIM issues.  Artisan adjustor Robert Hansel was also providing coverage representation to Brandon Chimenti under Chimenti's personal Artisan policy of liability insurance - which Hansel denied coverage for on Artisan's behalf on July 6, 2020 – and who was also well aware of those facts which proved and qualified Chimenti as an underinsured motorist.

b.     "*There has been no evidence presented to Artisan to show that the limits of liability under all applicable 'bodily injury' liability bonds and liability have been exhausted.*"  Artisan's involvement in those multiple claims associated with the horrific accident that resulted in a fatality and multiple serious life-changing injuries would evidence this statement was false.

c.     "*BEI has not provided any information indicating that an insured auto had been withdrawn from normal use, and . . . Artisan has not been provided information demonstrating that the 1994 Ford F-150 listed on the Policy had been withdrawn from normal use due to breakdown, repair, servicing, loss or destruction.*"  This statement misrepresented what Bottger had

already provided to Progressive in numerous communications, and which Bottger had invited Progressive to investigate at Bottger's place of business.

40.    On May 26, 2020, Bottger responded to Artisan's claim denials, requested Artisan to reconsider its claim denial, and pursuant to Artisan's invitation, provided the following information, again:

> "*To the extent Progressive has requested that any additional information be provided in support of Bottger's claim, be advised that Bottger Enterprises recently purchased [in late February, 2020], a 2009 Chevy Silverado - 3500 Dually Diesel, to replace the F-150.  Progressive can confirm this purchase, by it reference to the addition of that vehicle to the Bottger Enterprises Policy of Insurance.  As a result, the F-150 will be removed from the Bottger Enterprises policy of insurance at some time in the future.  With regard to the F-150, Bottger Enterprises maintains possession of the truck on its shop-site, particularly for any inspection and confirmation Progressive wants to perform on the truck so as to determine its condition, and specifically, its mechanical and steering column problems.*"

41.    At no time prior to, or after May 26, 2020, has Artisan ever contacted Bottger's foreman and previous operator of the F-150; has Artisan ever investigated any of Bottger's numerous representations; or has Artisan ever investigated, inspected or arranged for an inspection of Bottger's F-150, which as of the date of this Counterclaim remain parked and out of commission at Bottger's place of business.

42.    In Bottger's May 26, 2020 letter to Artisan, Bottger also provided Artisan with notice of the mediation that was to occur between all parties to the September 30, 2019 accident, and provided Progressive with notice of Bottger's request to seek Artisan's consent to settle with underinsured motorist Chimenti's insurance carrier at the mediation.

43.    On June 11, 2020, Artisan, by and through its attorney, notified Bottger that it planned to attend the Chimenti case mediation the next day on June 12, 2020, and also misrepresented to Bottger that Artisan had "*repeatedly attempted to investigate coverage for this claim*", and that

Bottger had failed to provide information to Artisan that the F-350 he was driving on September 30, 2019 was a *temporary substitute*.

44.     On June 12, 2020, Bottger attended a pre-litigation mediation with all other parties to the September 30, 2019 accident, in an attempt to settle and otherwise resolve an equitable division of the limit of underinsured motorist Chimenti's liability coverage.

45.     During that June 12, 2020 mediation, Artisan adjustor Hoffman made an appearance for a short period of time, but was never a party to the mediation, did not agree to terms associated with the mediation, did not pay any of the fees associated with that mediation, did not participate as a party to that mediation, and never agreed to confidentiality terms which governed the participants in that mediation.

46.     Instead, Artisan appeared at the mediation for the sole purpose of inviting Bottger to propose an amount of damages that he would otherwise seek from Artisan to resolve Bottger's UIM claim.  Bottger did so in good faith, to which Artisan responded with what was apparently a pre-determined minimal and bad faith nuisance amount it would resolve Bottger's UIM claims for.

47.     Bottger did not respond to Artisan's proposed nuisance settlement amount, as it was reflective of Artisan's continued course of bad faith and breach of its covenant of good faith and fair dealing.

48.     Because Bottger did not respond to Artisan's suggested bad faith claim resolution, Artisan left the mediation.

49.     Artisan's ploy to appear at the mediation, and attempt to resolve Bottger's claim for next to nothing, exemplified Artisan's continued course of conduct in its dealings with Bottger, and its continued attempt to compel Bottger to compromise the claims for benefits Bottger was owed.

50.     During the late evening of June 12, 2020, Bottger communicated with Artisan by email, requesting that Artisan provide consent, as required under the UIM provisions of the Bottger Policy, to Bottger settling his claims against underinsured motorist Chimenti for a minimal sum.

51.     Artisan responded to Bottger on June 17, 2020, informing Bottger that pursuant to the terms of the Bottger Policy and Bottger's request: "*Nonetheless, to the extent that your client believes it is necessary, and without waiver of its previously stated coverage position, you and your client are advised that Progressive has no objection to your client's proceeding with that settlement.*"

52.     In Artisan's June 17, 2020 communication to Bottger, it also invited Bottger to "*submit a demand to Progressive in response to the offer made at mediation,*" and that Progressive would be willing to consider the same.

53.     In response to Artisan's invitation for Bottger to present an offer to resolve his claims, Bottger sent Artisan a letter on October 1, 2020 with a proposed offer to resolve the Bottger and Artisan claims.

54.     Artisan never provided Bottger with a response to the offer it requested and invited Bottger to propose, and instead provided Bottger with letter notice on October 14, 2020 that it had sued Bottger in this Federal Court, without prior notice or other explanation.

55.     Artisan's decision to sue its own insured, and how that procedure was effected, exemplified Artisan's bad faith in its course of dealings with its insured, and the sharp legal practice it knowingly utilized to its insured's detriment, as follows:

        a.     Bottger is informed and alleges that Artisan invited Bottger to engage in and exchange offers of settlement knowing that the requests would delay Bottger from taking legal

action, and that Artisan had no real intent to evaluate or engage with Bottger in the settlement of Bottger's claims.

b.      Artisan's plan and course of conduct was designed by Artisan to buy additional time for it to prepare an action to sue Bottger, so that Artisan could beat Bottger to the Court if its choosing, and so that Artisan could be assured of litigating this matter in a federal court pursuant to § 1332 diversity jurisdiction instead of having to defend this matter in a Wyoming State District Court venued in the location of Bottger's residence.

c.      Artisan also engaged in this sharp legal practice fo the additional purpose of pressuring its insured and exploiting Bottger's financial position knowing that Bottger had incurred great loss and liability from the September 30, 2019 accident.

56.      On October 19, 2020, Bottger provided Artisan with a notice and request that Artisan tender a defense to Bottger in the suit that Artisan had just initiated against Bottger.

57.      In conformance with its course of dealings with Bottger, Artisan adjustor Rowena Pavlinac sent Bottger a letter on November 18, 2020, denying Bottger's request for Artisan's defense of Artisan's lawsuit against him.

58.      Artisan's reasons for its denial of Bottger's request that Artisan provide a defense of the suit under the Bottger Policy were contrived, and include the following:

a.      "*The Declaratory Judgement Action by Artisan in regard to Bottger's MedPay and UIM claims does not seek money damages.  As a result, because Bottger cannot become legally liable to pay money damages as a result of the Declaratory Judgment Action, there is no coverage available for the claims asserted against Bottger in that Action*."  Contrary to Artisan's assertion, money damages are sought and at issue in this action.  By its action, Artisan not only seeks an award

of attorneys' fees from Bottger, but also seeks to avoid the payment of those large amount of damages that Bottger has incurred. If Artisan prevails, Bottger will incur the entirety of those damages and the liability which arise from them, including those liabilities and damages which remain owed to medical providers for services provided to Bottger to resolve his injuries.

       b.      "*The claims asserted by Artisan in the Declaratory Judgment Action arise in contract. The claims do not arise from a sudden and accidental event. As a result, there is no coverage available . . .*" Contrary to Artisan's assertion, there would be no contract claim but for the September 30, 2019 accident, and the damages and liabilities that arose from that accident. The contract claims can only arise from the sudden and accidental event. Without the latter, the former does not exist, and Artisan's lawsuit against its insured does not get initiated. The claims of this action are directly resultant from the claims which arose from the accident, *i.e.* UIM coverage for the accident, and the resolution of damages and liability arising from that accident.

       c.      "*The Declaratory Judgment action is not seeking damages and it does not concern liability*." Contrary to Artisan's assertion, the claims at issue in this Court most certainly request that the Court determine who is liable to incur the many thousands of dollars of damages that resulted from Bottger's injuries. More compelling, is that Artisan has asked in paragraph 103 of its Amended Complaint for an award of attorney's fees from its insured. There is no doubt that Artisan's presumptive request "seeking" thousands of dollars in attorney's fees for the presently retained four attorneys it has working on this action, would make up a significant award of damages.

      59.      Artisan is liable for all representations, actions, inaction, conduct and omissions of its employees, adjustors, affiliates and agents regarding the solicitation and sale of its insurance coverage to Bottger, and in connection with the handling and denial of Bottger's claims.

60.     As a direct and proximate result of the actions and omissions and conduct of Artisan, Plaintiff has suffered various elements of damages including the following:

a.      Bottger has suffered economic and pecuniary losses as a result of uncompensated damages Bottger has incurred and which arise from the September 30, 20219 accident, and Chimenti being an underinsured motorist.  These losses are in an amount which will be shown by the evidence upon the trial of this matter;

b.      Bottger as suffered other economic and pecuniary loss and special damages in an amount which will be shown by the evidence upon the trial of this matter;

c.      In connection with the protection of its rights and in order to defend Artisan's lawsuit against Bottger, and in order for Bottger to assert Counterclaims in this action, Bottger has incurred attorney fees and expenses in an amount which will be shown by the evidence upon the trial of this matter;

61.     Artisan's refusal to pay or provide all of the benefits and protections to which Bottger is entitled under the Bottger Policy, including Artisan's failure to reject or accept Bottger's claims in a timely manner was unreasonable under *Wyo. Stat.* §26-15-124.  Accordingly, Bottger is also entitled to recover from Artisan a reasonable sum for reimbursement of attorney fees incurred in all litigation relating to Artisan's conduct together with interest on all amounts due (from the date of the event or such other date as may be determined by this Court) at the rate of ten percent (10%) per annum.

## COUNT ONE: <u>For Contract Benefits Plus Attorney Fees</u>

62.     By this reference, Bottger incorporates herein the allegations of paragraphs 1 through 61 of this Counterclaim as though set forth in their entirety.

63.     Artisan did, in exchange for valuable consideration paid, enter into an express contract of insurance (the Bottger Policy), whereby Artisan agreed to insure Bottger against any loss sustained by reason of any damage or loss to covered vehicles, their occupants and policy beneficiaries, including for Underinsured Motorist damages and loss and Medical Payment reimbursement, not specifically excluded by the Bottger Policy.

64.     Bottger's damages which arose from the September 30, 2019 accident, and which damages also resulted from Chimenti being an Underinsured Motorist, and Bottger's right to Medical Payment reimbursement for medical services provided, were covered by the Bottger Policy and not specifically excluded.  Therefore, under the terms of the Bottger Policy, Artisan is to pay damages and/or cover the losses and medical payment reimbursement obligations suffered by Bottger.

65.     Bottger has demanded that Artisan pay damages under the Bottger Policy for Underinsured Motorist coverage and damages, and for Medical Payment reimbursement to compensate Bottger for Bottger's damages suffered as a result of the September 30, 2019 accident; and Artisan has refused and still refuses to pay Bottger Policy benefits and damages, and has instead sued Bottger in its attempt to avoid the payment of Bottger's claims.

66.     Artisan materially breached the express contract of insurance by failing to provide coverage as set forth in the Bottger Policy, by failing to cover the losses and damages suffered by Bottger, and further breached the express contract of insurance in that, upon demand, Artisan failed to compensate Bottger for the losses sustained, and for losses to be sustained in the future, as a result of the September 30, 2019 accident, all to Bottger's damage in an amount to be proven at trial.

67.    As a direct and proximate result of Artisan's breach of the express contract of insurance, Bottger has suffered and will continue to suffer direct and consequential damages in amounts to be proven at trial.

68.    The breaches and failures to pay on the part of Artisan were done willfully, wantonly, in bad faith, with malice, and/or in reckless disregard of the terms of the Bottger Policy, and such conduct of Artisan justifies an award of punitive and/or exemplary damages or at the very least the payment of interest and attorney's fees as provided by Wyo. Stat. §26-15-124.

### COUNT TWO: Insurance Bad Faith

69.    By this reference, Bottger incorporates herein the allegations of paragraphs 1 through 68 of this Counterclaim as though set forth in their entirety.

70.    By virtue of the facts alleged herein, other acts that may be shown at trial, and the following additional acts of Artisan and its agents and adjustors, Artisan has denied payment of benefits that were owed to Bottger as its insured, did not act reasonably in doings so, and by Artisan's conduct, course of dealings and actions in doing so, caused Bottger damages.

71.    Artisan has similarly breached its duty of good faith, fair dealing and that of reasonable conduct which it owes to Bottger as its customer and insured, as follows:

a.    Artisan failed to promptly and fairly investigate Bottger's claims;

b.    Artisan failed to adopt and implement reasonable standards for the prompt investigation of claims arising under the Bottger Policy;

c.    Artisan has failed to consider the interests of Bottger on an equal footing as Artisan's own interests and has put Artisan's own interests ahead of the interests of Bottger, to Bottger's detriment;

d.      Artisan has refused to pay Bottger's claims without conducting a reasonable investigation based upon all available information;

e.      Artisan has refused to make any payments due under the Bottger Policy without a reasonable basis for doing so;

f.      Artisan has refused to affirm or deny coverage of Bottger's claims in writing within a reasonable time after receipt of the claims;

g.      Artisan has refused to clearly communicate any justifiable reason for its refusal to pay Bottger's claims, and has changed its reasons for denying Bottger's claims at various times throughout the last year;

h.      Artisan has misinterpreted its own Bottger Policy requirements, has misapplied Bottger Policy requirements or definitions for the sole purpose of denying Bottger's claims, and has deliberately misinterpreted records and controlling Bottger Policy provisions;

i.      Artisan has deliberately invented or created new Bottger Policy requirements that it has communicated to Bottger as the reason for Artisan's denial of Bottger's claims;

j.      Although the liability of Artisan is reasonably clear, Artisan has not attempted in good faith to effectuate a prompt, fair and equitable settlement of Bottger's claims;

k.      Artisan engaged in a course of conduct with Bottger so as to benefit its own position over that of Bottger in this action, and in instituting this litigation against its own insured, all while knowing that Bottger was unable to or had minimal resources to defend such action.  As a result of Artisan's suit against its own insured, and its refusal to pay or otherwise invite or respond to Bottger's claims and requests for resolution, Bottger was forced to incur legal expenses and costs;

l.      Artisan has unfairly and unreasonably refused payment of Bottger's claims, and sued Bottger in this Federal Court, in order to protect and increase its own assets and interests to the detriment of Bottger;

m.     Artisan has made misrepresentations or contrived interpretations of the Bottger Policy to deny Bottger's claims, and is also denying Bottger's request that Artisan provide Bottger with a defense of the lawsuit Artisan initiated against Bottger;

n.      Artisan has made representations that it does not seek damages from Bottger in this action, when it has plead and requested award of attorney's fees against Bottger, and seeks to avoid the payment of damage claims to Bottger and those claims Bottger is subrogated to;

o.      Artisan has not only acted without justification in refusing its payment of Bottger's claims for benefits, but has acted intentionally and used deceit, nondisclosure, violations of industry custom, violations of its own internal policies and/or deliberate attempts to obfuscate Bottger's claims;

p.      Artisan has utilized threats of dire consequences  –  particularly at the Chimenti mediation  – in its attempts to force Bottger to agree upon an unfair settlement and the reduction of those damages and claim benefits Bottger is entitled to;

q.      Artisan has now misrepresented the existence or validity of disqualifying terms in the Bottger Policy in its Amended Complaint, and now asserts that previously unmentioned Bottger Policy provisions, or theories applicable to those provisions, should now be utilized or applied to deny Bottger's claims;

r.      By Artisan's actions at the Chimenti mediation; by Artisan's subsequently contrived requests that Bottger make a settlement offer that Artisan never responded to; by Artisan's

race to this courthouse and the filing of this suit against its insured without notice; and by Artisan's subsequent denial of Bottger's request for a defense of this suit; Artisan has exploited its insured's vulnerable financial position following a loss covered by the Bottger Policy, and has instead imposed burdensome requirements not contained in the Bottger Policy;

        s.     Artisan has imposed other burdensome discovery and proof of claim requirements on Bottger that were not contained in the Bottger Policy, and were utilized pretextually, and so as to provide Artisan with self-serving excuses by which it could deny Bottger's claims for coverage;

        t.     Artisan's retaliated against Bottger by the filing of this suit in Federal Court, as a result of Bottger having referenced he would have to seek a subsequent legal remedy if Artisan continued with the same course of dealing it had been utilizing against its insured;

        u.     Artisan intervened in and abused the Chimenti mediation process, so as to assert Artisan's own agenda, for Artisan's own benefit.

    72.    As a result of such conduct set forth herein and such conduct as may continue pending completion of this litigation, Artisan has engaged in bad faith and unfair claim settlement practices, has breached those other duties of good faith it owed to Bottger, and Bottger has suffered and is continuing to suffer damages in an amount to be shown at trial.

    73.    During the delay of processing Bottger's claim, Artisan has earned interest on the money it should have paid Bottger in damages under the Bottger Policy. Artisan benefitted from its delay to the detriment of Bottger.

74.     Artisan committed acts of bad faith in violation of law and public policy intentionally, maliciously, and with furtive design and ill will towards Bottger, or with conscious indifference towards and reckless disregard for Bottger's rights.

75.     The conduct of Artisan has been willful and wanton and/or malicious and/or outrageous and of such a nature as to justify and support an award of punitive damages against Artisan in order to punish Artisan for its actions and conduct and the actions and conduct of those for whom it is liable and responsible including its employees, agents, adjustors and attorneys. Punitive damages should be awarded in an amount which takes into consideration the wealth of Artisan, and which will be sufficient to punish Artisan and will also be sufficient to deter other insurance companies from acting in a similar fashion in the future toward other policy holders.

### COUNT THREE: Breach of Covenant of Good Faith and Fair Dealing

76.     By this reference, Bottger incorporates herein the allegations of paragraphs 1 through 75 of this Counterclaim as though set forth in their entirety.

77.     Artisan owes a duty of good faith and fair dealing to Bottger because, among other things, Artisan sold its Commercial Bottger Policy to Bottger, and Artisan has benefitted from the premium paid by Bottger.  In its course of dealing with Bottger and while soliciting insurance business from Bottger and the general public, Artisan made representations concerning the characteristics and benefits of the commercial policy of insurance that Bottger ultimately purchased. Artisan has also widely advertised the characteristics and benefits of the commercial insurance policy purchased by Bottger.

78.     By virtue of the special relationship that was created when it sold the policy of insurance to Bottger, Artisan owes a duty of good faith and fair dealing to Bottger.

79.     By Artisan's actions, words, correspondence, performance, written communications and course of dealings, Artisan agreed to contract with, and expressed a mutual manifestation of its intent to make Bottger an insured, a beneficiary of the Bottger Policy, to resolve Bottger's claims in a reasonably prompt manner, and to review and act on those claims reasonably and in good faith.

80.     The Bottger Policy entered into between Artisan and Bottger included the implied covenant of good faith and fair dealing.

81.     By virtue of their having entered into the Bottger Policy agreement, and the covenant of good faith and fair dealing implicit therein, Artisan had a duty of utmost good faith in their relationship and agency with and on behalf of Bottger.

82.     By the nature of their conduct alleged herein, and as particularly alleged in the *Facts and Allegations Common to All Causes of Action* above, and as a result of such conduct which continues pending completion of this litigation, Artisan has breached the implied covenant of good faith and fair dealing and has breached other duties it owed to its insured – Bottger.

83.     By the nature of Artisan's communications, actions, claim denials and litigation, Artisan was aware of the consequential and foreseeable damages to Bottger should Artisan continue to delay, threaten, and refuse to resolve and acknowlege Bottger's claims under the Bottger Policy.

84.     As a direct and proximate result of Artisan's breach of the covenant of good faith and fair dealing, Bottger has suffered and is continuing to suffer damages in an amount as shall be proved with specificity at trial herein.

### COUNT FOUR: <u>Violation of Unfair Claims Settlement Practices</u>
### [*Wyo. Stat*. § 26-13-124]

85.     By this reference, Bottger incorporates herein the allegations of paragraphs 1 through 84 of this Counterclaim as though set forth in their entirety.

86.    Artisan has, in the course of its dealings with Bottger as alleged herein, violated the terms and requirements of *Wyo. Stat*. § 26-13-124.

87.    Artisan has a duty to its insured to treat it fairly, reasonably, and in good faith, and to not engage in unfair and deceptive acts or practices in Artisan's business of providing insurance in Wyoming.

88.    Artisan has engaged in the following unfair and deceptive acts or practices when dealing with Bottger and denying Bottger's claims in Wyoming:

a.    Misrepresenting pertinent facts or insurance policy provisions relating to Bottger's coverages at issue;

b.    Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under the Bottger Policy;

c.    Failing to investigate the claims arising under the Bottger Policy;

d.    Refusing to pay Bottger's claims without conducting a reasonable investigation;

e.    Failing to affirm or deny coverage of Bottger's claims within a reasonable time after they were presented;

f.    Not attempting in good faith to effectuate a prompt, fair and equitable settlement of Bottger's UIM claims when UIM liability was clear;

g.    Compelling Bottger to become involved in litigation as a result of offering substantially less than the amount Bottger's claims were valued;

h.      Attempting to settle Bottger's claims for less than the amount to which a reasonable person would have believed he was entitled by reference to the Bottger Policy and the damages incurred;

89.     As a result of such conduct set forth herein and such conduct as may continue pending completion of this litigation, Artisan has engaged in unfair claim settlement practices, and has breached those other duties of good faith it owed to Bottger, and Bottger has suffered and is continuing to suffer damages in an amount to be shown at trial.

90.     During the delay of processing Bottger's claim, Artisan has earned interest on the money it should have paid Bottger in damages under the Bottger Policy.  Artisan benefitted from its delay to the detriment of Bottger.

91.     Artisan committed acts of bad faith in violation of law and public policy intentionally, maliciously, and with furtive design and ill will towards Bottger, or with conscious indifference towards and reckless disregard for Bottger's rights.

92.     The conduct of Artisan has been willful and wanton and/or malicious and/or outrageous and of such a nature as to justify and support an award of punitive damages against Artisan in order to punish Artisan for its actions and conduct and the actions and conduct of those for whom it is liable and responsible including its employees, agents adjustors and attorneys. Punitive damages should be awarded in an amount which takes into consideration the wealth of Artisan, and which will be sufficient to punish Artisan and will also be sufficient to deter other insurance companies from acting in a similar fashion in the future toward other policy holders.

**COUNT FIVE: <u>Violation of *Wyo. Stat.* § 26-15-124.</u>**

93.     By this reference, Bottger incorporates herein the allegations of paragraphs 1 through 92 of this Counterclaim as though set forth in their entirety.

94.     Artisan has, in the course of its dealings with Bottger, and in its receipt of Bottger's claims for insurance benefits as alleged herein, delayed the acceptance or rejection of Bottger's UIM and MedPay claims for more than Forty-five days after receipt of the claims and proof of loss, and for significant amounts of time which exceeded 180 days.

95.     Artisan's breach of the covenant of good faith and fair dealing, its bad faith, course of dealings, and refusal to pay Bottger any amount on Bottger's claims were unreasonable and without cause.

96.     As a result, and pursuant to *Wyo. Stat*. § 26-15-124(c),  Bottger should be awarded a reasonable sum as attorney's fee in this matter, and the payment of interest on the claim amount owed, at the amount of 10% per year.

**WHEREFORE** Counterclaimants Bottger Enterprises, Inc., and Steve Bottger pray for Judgment of the Court against Plaintiff Artisan and Truckers Casual Company as follows:

A.     In favor of Bottger in the amount of all pecuniary losses, damages, expenses and the value of the UIM and MedPay claims Bottger has sustained or is otherwise entitled to as a result of the events and the acts of Artisan, and the underlying accident that occurred on September 30, 2019;

B.     In favor of Bottger for interest at the rate of Ten Percent (10%) per annum on all Bottger Policy benefits from the date of 45 days after the event (or such other date as shall be designated or determined by the Court);

C.      In favor of Plaintiff for all other compensatory and special damages and in the amount shown by the evidence upon the trial;

D.      For punitive damages in favor of Bottger on the basis of the proof upon the trial of this matter;

E.      In favor of Bottger for the reasonable attorney fees incurred in the prosecution of this action in an amount to be set by the Court;

F.      In favor of Bottger for Bottger's costs and expenses herein incurred; and

G.      That Bottger be granted such other and additional relief as may be appropriate and just under the circumstances.

Dated this 31st day of December, 2020.


                                                    */s/ Galen Woelk*
                                                    Galen Woelk
                                                    Wyo. Bar # 6-3300
                                                    Alan Harding
                                                    Wyo. Bar # 6-4424
                                                    BROWN & HISER, LLC
                                                    163 N. 4th St. – P.O. Box 971
                                                    Laramie, WY 82073-0971
                                                    Telephone:  (307) 745-7358
                                                    Facsimile:  (307) 745-7385
                                                    gwoelk@brownandhiser.law
                                                    Agh@brownandhiser.law
                                                    Attorneys for Defendants

**Certificate of Service**

I hereby certify that on the 31st day of December, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to the parties as appropriate, including to the following e-mail addresses:

| | |
|---|---|
| Isaac Sutphin: | insutphin@hollandhart.com |
| Macrina Jerabeck: | mmjerabeck@hollandhart.com |
| Thomas Lether: | tlether@letherlaw.com |
| Eric Neal: | eneal@letherlaw.com |

*/s/ Galen Woelk*
Galen Woelk
Attorney for Defendants